**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL NO. 1:10CR-42-R**

UNITED STATES OF AMERICA,
    PLAINTIFF,

v.

ROBERT ANTHONY WYATT,
    DEFENDANT.

## MEMORANDUM OPINION AND ORDER

The Defendant has filed a motion to suppress evidence obtained pursuant to a search warrant. The Government has filed a response. A suppression hearing was held on April 19, 2011. A post-hearing brief was filed by the Defendant. A post-hearing response was filed by the Government. This matter is ripe for adjudication, and the motion to suppress is DENIED.

## BACKGROUND

The Defendant was arrested for the attempted manufacture of methamphetamines. The Defendant initially came under suspicion of manufacturing methamphetamines following an anonymous tip phoned into a sheriff's hotline. The sheriff shared the tip with the local drug enforcement detectives. The detectives, with Detective Wimpee leading, performed some investigation and surveillance of the Defendant, but were unable to uncover evidence of methamphetamine production. They did, however, notice a truck parked at the Defendant's home whose owner had recently purchased a large but legal amount of pseudoephedrine. Additionally, the detectives also noticed multiple vehicles parked at the premises on some days.[1]

During a different investigation, the Defendant's name also came up. At the time, the

---

[1] The Defendant ran an auto-repair shop from the property, which is the offered explanation for the large number of vehicles sometimes located on the premises.

Defendant was on unsupervised parole. A parole officer heard the Defendant's name was mentioned in connection to a drug investigation, and decided that he should perform a home visit. The parole officer was not assigned to the county in which the Defendant currently lived. However, the Defendant was very close to the county line, the parole officer had statewide authority despite generally working out of a specific county, and the parole officer testified it was not unusual for him to visit neighboring counties. The parole officer asked a detective to accompany him for security purposes.

After arriving at the Defendant's home, the parole officer learned that the Defendant was not currently at home. The parole officer was prepared to await the Defendant's return, so the detective accompanying the parole officer moved off to sweep the exterior of the residence for any threats that might present during the parole visit. While standing in the driveway, the detective saw bottles and tubing configured to form, in his experience, an HCL gas generator. In the detective's experience, an HCL gas generator is only used in the production of methamphetamines.

Upon noticing the gas generator, the detective and parole officer called off the home visit. The detective on the scene contacted the detective in charge of the Wyatt investigation, Detective Wimpee. Given the presence of the HCL gas generator in plain view on the property in addition to the anonymous tip and the Defendant's past association with drugs, Detective Wimpee sought and obtained a search warrant for the Defendant's residence. After obtaining the search warrant, Detective Wimpee and others executed the warrant and searched the house the same day. During execution of the warrant, evidence was discovery to indicate the manufacture of methamphetamines.

**STANDARD**

The Fourth Amendment was established to protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV*; see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. The law does not require that every conceivable explanation other than a suspect's illegal conduct be ruled out in order to find probable cause, "[i]nstead, we need only consider whether there are facts that, given the factual and practical considerations of everyday life, could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998) (citations omitted). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)), *cert. denied*, 127 S. Ct. 446 (2006). The Court applies a deferential standard of review. *See United States v. Leon*, 468 U.S. 897, 914 (1984); *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). The issuing judge's findings of probable cause should not be set aside unless arbitrarily made. *United States v. Brown*, 147 F.3d 477, 484 (6th Cir. 1998).

**DISCUSSION**

The Defendant argues for suppression based on four arguments. Some of the arguments involve whether it was appropriate for police to be at the residence of the Defendant or whether it was appropriate for a parole inspection to occur. However, the officer stated that the gas

generator was seen in plain view from the driveway, without entering into the curtilage.  Making this argument even more convincing is the fact that an auto repair facility, open to the public, was also run on the premises.  *United States v. Halaska*, No. 07-CR-40049, 2008 WL 539050 (S.D.Ill. February 26, 2008) (Evidence discovered in trash piles was in plain view, especially in light of a car repair facility located on the property that was open to public).  Because the evidence was in plain view from a location in which the officer could lawfully be present, the reason for the visit to the home is irrelevant.  Accordingly, the primary remaining issue is whether there was sufficient probable cause for the warrant to issue.

The Defendant asserts that, once incorrect information is removed from the affidavit supporting the search warrant, there was not probable cause for the search warrant to issue.  The government counters this argument with the unsupported blanket assertion that the observation of an HCL gas generator, "standing alone, would be sufficient to constitute probable cause to believe that other evidence of methamphetamine manufacturing would be found on the premises."  *Government's response brief*, DM 39, pg. 2.  This Court could find no authority to support this position, and the government offers absolutely no arguments to support such a position.  The cases uncovered by this Court have generally had evidence other than the presence of an HCL gas generator when issuing a search warrant.  *See United States v. Carpenter*, No. 3:10-CR-109, 2011 WL 540528 (E.D.Tenn January 11, 2011) (Probable cause established when multiple pieces of evidence present, including two gas generators); *United States v. Birmingham*, No. 5:06-CR-411, 2006 WL 2850532 (E.D.Mo. October 3, 2006) (Probable cause established when an officer observed a burn site, multiple guns, an HCL generator, jars of liquid, muriatic acid, and compressed air.).  While the Defendant has offered no alternative, legal explanation for

4

the presence of an HCL gas generator, this Court thinks it is appropriate, nonetheless, to require something more.

In this case, however, the Government has provided more. The affidavit for the search warrant also included the anonymous tip relayed to the sheriff stating that methamphetamines were being manufactured at that address. While anonymous tips generally "demand . . . stringent scrutiny of their veracity, reliability, and basis of knowledge," the presence of an HCL gas generator on the premises adds some corroboration to the tip. *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003). The additional evidence discussed below, in addition to being independent grounds for providing probable cause, also help establish the veracity and reliability of the anonymous tip.

The government also established that the Defendant had a criminal history involving methamphetamines. Though the history was slightly mischaracterized in the affidavit submitted to the magistrate judge, it is uncontested that the Defendant has past convictions associated with methamphetamines.[2]

Finally, police had observed a truck parked at the Defendant's residence, the owner of which had been purchasing pseudoephedrine. Pseudoephedrine is one of the primary components in the manufacture of methamphetamines. While the purchases were all of a legal quantity, this is still relevant to the probable cause determination when considered in conjunction

---

[2] The affidavit stated that the Defendant had been convicted of manufacturing methamphetamines. However, in the Defendant's first prosecution, the Defendant was charged with manufacturing methamphetamines but eventually pled guilty only to possession of methamphetamine, which resulted in a five year sentence. Similarly, in his second prosecution, he was also charged with manufacturing methamphetamine but pled guilty to possession of drug paraphernalia. *Government Reply Brief*, DN 39, pg. 2-3.

with the HCL gas generator, the anonymous tip, and the Defendant's prior criminal history.

When looking at all the relevant facts, it is clear that there was "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime [would] be found in a particular place." Police received a tip, from an anonymous source, that the Defendant was engaged in the manufacture of methamphetamines. In the course of corroborating that tip, the police observed a car whose owner had purchased large but legal amounts of pseudoephedrine recently. Upon farther investigation, the detectives heard that the Defendant was on probation for methamphetamine related crimes, although none of the convictions were specifically for manufacturing methamphetamines. Finally, an officer saw an HCL gas generator in plain view. The officer that saw the HCL gas generator knew of no other use of such a device other than for the manufacture of methamphetamines and no other explanation has been provided. Accordingly, there was probable cause to support the search warrant, and all the evidence obtained as a result is therefore admissible.[3]

## CONCLUSION

For the foregoing reasons, the motion to suppress is DENIED.

---

[3] The Defendant also takes issue with the date of the affidavit supporting the search warrant. However, the government has submitted an affidavit stating that the incorrect date was the result of a clerical error.